UNITED STATES of America,
Plaintiff-Appellee,

v.

WOODCREST NURSING HOME, a Partnership, Gerald Schwartz, individually and doing business as Woodcrest Nursing Home, Donald Goldberg, Irwin M. Rosenthal, Jack E. Bronston, and Hilda Peirez, William Peirez and Barbara Kirby, as Executors of the Estate of Lawrence Peirez, Defendants.

Irwin M. ROSENTHAL, Jack E. Bronston, and Hilda Peirez, William Peirez and Barbara Kirby, as Executors of the Estate of Lawrence Peirez, Defendants-Appellees,

v.

WOODCREST NURSING HOME, a partnership, Gerald Schwartz, individually and doing business as Woodcrest Nursing Home, Defendants-Appellees-Appellants,

v.

Donald GOLDBERG,
Defendant-Appellant-Appellee.

Nos. 561, 660, Dockets 82–6164, 82–6174.

United States Court of Appeals,
Second Circuit.

Argued Jan. 3, 1983.

Decided April 20, 1983.

Charles S. Kleinberg, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Miles M. Tepper, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for plaintiff-appellee.

E. Cooke Rand, P.C., New York City, filed a brief for defendants-appellees.

Charles Haydon, New York City (Dublirer, Haydon, Straci & Victor, New York City, on the brief), for defendants-appellees-appellants.

H. Stuart Klopper, Mineola, N.Y., filed a brief for defendant-appellant-appellee.

Before KEARSE, WINTER and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

These appeals arise out of the adjudications of (1) a claim of plaintiff United States to recover overpayments made by the Secretary of Health, Education and Welfare ("Secretary") to defendant Gerald Schwartz, individually and doing business as Woodcrest Nursing Home ("Woodcrest") as a provider of Medicare services, (2) a counterclaim by Schwartz asserting a want of due process in the administrative treatment of Woodcrest's Medicare reimbursement claims, and (3) cross-claims by Schwartz against his codefendants. Schwartz appeals from a judgment of the United States District Court for the Eastern District of New York, Jack B. Weinstein, *Chief Judge,* insofar as it dismissed Schwartz's counterclaim and failed to order that the other defendants pay a total of 70% of the United States' judgment—entered in the sum of $214,039.95, plus interest—against Schwartz.[1] Defendant Donald Goldberg appeals from so much of the court's judgment as granted Schwartz's

cross-claim against him in the sum of $273,-449.98, plus interest. For the reasons below, we affirm the judgment.

## BACKGROUND

### A. *The Claims of Woodcrest for Reimbursement from the Secretary*

The controversy concerns the operations of Woodcrest, as a "provider" under Part A of the Medicare Program of the Social Security Act, 42 U.S.C. §§ 1395c to 1395i–2 (1976 & Supp. IV 1980), from August 30, 1968, through April 19, 1969, and Woodcrest's claims for reimbursement for services rendered to it during that period by the Orthopedic and Rehabilitation Institute ("ORI"). During that period, Woodcrest was a general partnership whose partners were Schwartz, Goldberg, Lawrence Peirez, and defendants Irwin M. Rosenthal and Jack E. Bronston. Under the partnership agreement as amended in November 1968, Goldberg was the managing partner of Woodcrest, having full charge of its operations and sole power to enter into contracts on its behalf.

Goldberg was also the owner of ORI, from which Woodcrest purchased services. Under Medicare regulations, since Goldberg owned ORI and an interest in Woodcrest, ORI was considered "related" to Woodcrest, *see* 42 C.F.R. § 405.427(b), set forth in note 3 *infra,* and Woodcrest therefore normally would not be entitled to reimbursement from the Secretary for more than the actual cost to ORI of providing the services to Woodcrest. 42 C.F.R. § 405.427.[2] In light

---

**1.** Although the notice of appeal filed by Schwartz is styled an appeal by both Schwartz and Woodcrest, the judgment entered in favor of the United States ran only against Schwartz. Hence we refer to the appeal as that of Schwartz.

Schwartz's notice of appeal stated that he appealed from so much of the judgment as (1) granted the claim of the United States against him, (2) dismissed his counterclaim against the United States, (3) dismissed the claim of the United States against defendants other than Schwartz and Woodcrest, and (4) failed to award him judgment against defendants Goldberg, Rosenthal, Bronston and the Peirez defendants. Schwartz's brief on appeal pursues only the second and fourth of these challenges,

as he argues that (A) the dismissal of the counterclaim should be reversed, and (B) if the dismissal of the counterclaim is affirmed, he should be granted judgment against the other defendants for a total of 70% of the amount of the United States' judgment against him.

**2.** 42 C.F.R. § 405.427 provides, in pertinent part, as follows:

(a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of

of these regulations, the partners reached a special agreement with respect to services supplied to Woodcrest by ORI, as reflected in a memorandum dated November 29, 1968 (hereinafter "ORI Repayment Agreement"):

[i]n the event[ ] that the United States of America or its appropriate governmental sub-division, or any appropriate insurance carrier or fiscal agent or agency, under and pursuant to the Medicare or similar successor program, determines at any time, up to and including the annual audit for any year, but not thereafter, that any charge or charges made by the Orthopedic and Rehabilitation Institute, during such year to the Woodcrest Nursing Home, for care rendered to patients of the nursing home are by virtue of incorrect or inappropriate rate, not reimbursable in part, then such amount or amounts so determined to be excessive or non-reimbursable, will be borne by the Orthopedic and Rehabilitation Institute and repaid to the General Partnership within thirty (30) days after such determination by such governmental or other Agency.

In accordance with the general statutory scheme governing Medicare reimbursement, see 42 U.S.C. § 1395h, Woodcrest designated a private insurance carrier, to wit, Travelers Insurance Company ("Travelers"), to serve as the fiscal intermediary through which Woodcrest was to receive payments from the Secretary for the "reasonable costs" incurred to provide services to Medicare beneficiaries. Woodcrest provided services, some of which it purchased from ORI, and Travelers made both interim payments to Woodcrest based on the estimated cost of services furnished, see 42 U.S.C. § 1395g; 42 C.F.R. § 405.454(e) (1981), and current financing payments, see id. § 405.454(g).

Eventually Woodcrest submitted to Travelers detailed claims of reimbursable costs for the period in question, which included $171,442 in payments it had made to ORI. Travelers engaged the accounting firm of Peat, Marwick and Mitchell ("Peat, Marwick") to audit Woodcrest's claims and advised Peat, Marwick that ORI was an organization "related" to Woodcrest and that ORI's costs would therefore have to be determined by auditing ORI's books and records.

ORI, however, refused to make its books and records available for audit. Accordingly, in light of the statutory provision that "no [reimbursement] payments shall be made to any provider unless it has furnished such information as the Secretary may request in order to determine the amounts due such provider," 42 U.S.C. § 1395g, Woodcrest's claims for reimbursement for its payments to ORI were disal-

comparable services, facilities, or supplies that could be purchased elsewhere.

(b) *Definitions*-(1) *Related to provider.* Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services, facilities, or supplies.

(2) *Common ownership.* Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

. . . .

(d) *Exception.* An exception is provided to this general principle if the provider demonstrates by convincing evidence to the satisfaction of the fiscal intermediary (or, where the provider has not nominated a fiscal intermediary, the Health Care Financing Administration), that the supplying organization is a bona fide separate organization; that a sub-stantial part of its business activity of the type carried on with the provider is transacted with others than the provider and organizations related to the supplier by common ownership or control and there is an open, competitive market for the type of services, facilities, or supplies furnished by the organization; that the services, facilities, or supplies are those which commonly are obtained by institutions such as the provider from other organizations and are not a basic element of patient care ordinarily furnished directly to patients by such institutions; and that the charge to the provider is in line with the charge for such services, facilities, or supplies in the open market and no more than the charge made under comparable circumstances to others by the organization for such services, facilities, or supplies. In such cases, the charge by the supplier to the provider for such services, facilities, or supplies shall be allowable as cost.

lowed. Initial notice of the denial was given in August 1971; the decision became final in 1973.

In October 1973, Schwartz and Goldberg (who by then were no longer partners, *see infra*) appealed Travelers' decision to an intermediary hearing panel, arguing that Woodcrest's ORI claims should have been granted pursuant to the statutory exception to the general rule limiting reimbursement to ORI's actual costs, 42 C.F.R. § 405.427, *see* note 2 *supra*. They contended that Woodcrest was entitled to receive the full amount of ORI's charges because "a substantial part of [ORI's] business activity of the type carried on with [Woodcrest] [was] transacted with others than [Woodcrest] and organizations related to [ORI] by common ownership or control . . . ." § 405.-427(d). Travelers responded that ORI's records would have to be made available to substantiate these claims.

In the meantime, on April 19, 1969, Schwartz had purchased the partnership interests of the other Woodcrest partners, and in April 1971 Goldberg filed a demand for arbitration against Schwartz, seeking, *inter alia,* an accounting for Goldberg's share of Woodcrest's profits. Schwartz counterclaimed, seeking, *inter alia,* payment from Goldberg under the ORI Repayment Agreement. Eventually, the arbitrators awarded Goldberg $82,168 on his claim, dismissed Schwartz's counterclaim without prejudice, and directed Goldberg to cooperate in Woodcrest's quest for reimbursement from the Secretary:

> [n]othing in this AWARD shall preclude Gerald Schwartz from making a claim on the memorandum dated November 29, 1968 amending the General Partnership Agreement for the operation of Woodcrest, but only upon the final determination of a court of competent jurisdiction that charges made by the Orthopedic and Rehabilitation [*sic*] Institute ("QRI") and paid by Woodcrest to ORI should not be reimbursed by the appropriate agency by virtue of incorrect or inappropriate

rate. *Dr. Goldberg is directed to cooperate fully in the process of effecting such determination.*

Opinion of Arbitrators dated August 1, 1975 ("Arbitrators' Opinion") (emphasis added).

Proceedings on the intermediary appeal, begun in 1973, continued into 1977, and included discovery, conferences, and a hearing. ORI made available to the hearing panel certain of its books and records but withheld documents that would have allowed the panel to determine such questions as the extent of ORI's services to unrelated entities and whether ORI's charges to Woodcrest were in line with its charges to the general public. Accordingly, the panel held that Woodcrest had not met its burden of showing the applicability of the statutory exception. In so ruling the panel noted that the ORI records that had been supplied indicated that "a substantial part of ORI's activity was conducted with Woodcrest Nursing Home and not as called for by regulations, with parties unrelated to the provider by common ownership or control." Intermediary Hearing Decision No. T–26 dated May 5, 1977, at 3.

### B. *Proceedings Below*

As a result of the denial of Woodcrest's claims for reimbursement for its payments to ORI, Woodcrest's entitlement to Medicare reimbursement was some $76,000 less than the amount of current financing payments made to Woodcrest by Travelers for the period in question. Accordingly, in January 1977, the United States commenced this action to recover overpayments made to Woodcrest.[3] Schwartz interposed a counterclaim for $171,442, the amount of Woodcrest's disallowed payments to ORI, contending that Travelers' determination that Woodcrest was not entitled to reimbursement for its payments to ORI was arbitrary and capricious. Schwartz crossclaimed against Goldberg in the same amount, contending, *inter alia,* that if Woodcrest's payments to ORI were not reimbursable, Goldberg was liable to Schwartz under the ORI Repayment Agreement.

---

**3.** An additional claim was asserted against Schwartz with respect to a later period, for overpayment due to various accounting deficiencies.

Following an exchange of pleadings and motions for summary judgment, the district court remanded to Travelers its May 1977 determination for further findings and reconsideration. On remand, several discovery requests were made to Woodcrest and ORI. ORI provided some of the data requested of it, but not others. As a result, although the panel found that ORI had performed services for Woodcrest and for others unrelated to ORI, the panel was unable to determine whether the part of ORI's business activity that was conducted with the latter group was "substantial" within the meaning of § 405.427(d), since the ratio of ORI's services for Woodcrest to ORI's services for others could not be determined. As to each category of services the panel stated that "[t]he extent of the services . . . ha[d] not been established by convincing evidence to the satisfaction of . . . Travelers." Remand Decision dated June 6, 1980, at 3, 5. The panel thus concluded that Woodcrest was not entitled to receive reimbursement for its payments to ORI:

In order that reimbursement for such services may be a part of Woodcrest's Medicare reimbursable costs thereby permitting a payment to ORI which would be considered reimbursable as a Medicare cost there must be an auditable basis for making a determination of said costs. The burden of proof is not on the intermediary auditor. . . . [T]here is no sound auditable way to make the cost determination because the necessary records were not made available to the Intermediary. The Panel does not find that the Intermediary has erred and must therefore sustain the original Panel decision.

*Id.* at 7.

After receiving Travelers' new findings, the district court granted summary judgment in favor of the United States against Schwartz but dismissed its claims against all other defendants. The court dismissed Schwartz's counterclaim against the United States, but granted summary judgment in favor of Schwartz on his cross-claim against Goldberg "for failure to cooperate under the arbitration decision." Order dated May 24, 1982. These appeals followed.

## DISCUSSION

On appeal, Schwartz argues chiefly that the judgment should be reversed insofar as it dismissed his due process counterclaim challenging the procedures for review of Travelers' rejection of Woodcrest's reimbursement claim.[4] Goldberg contends chiefly that the court erred in granting judgment against him because Schwartz's cross-claim was barred by principles of res judicata. Finding no merit in any of the appellants' challenges to the judgment, we affirm.

### A. Schwartz's Due Process Claim

Part A of the Medicare Program, entitled "Hospital Insurance Benefits for the Aged and Disabled," 42 U.S.C. §§ 1395c to 1395i-2, is a government-financed program designed to provide insurance, principally for persons over the age of 65, against the cost of institutional health services, such as hospital and nursing home fees. Part B, entitled "Supplementary Medical Insurance Benefits for the Aged and Disabled," 42 U.S.C. §§ 1395j to 1395w (1976 & Supp. IV 1980), is a voluntary program funded partly by contributions of the individuals enrolled and partly by the government, and is designed to reimburse persons who are disabled or over the age of 65 for a portion of the cost of certain medical expenses not covered by Part A, such as physician services, outpatient physical therapy, x-rays, and laboratory tests.

Schwartz's principal claim on appeal is that he was denied due process because he was afforded no review by the Secretary

4. Schwartz's additional complaint that the court erred in failing to grant him judgment against his codefendants for 70% of the United States' judgment against him is baseless. Although the "WHEREFORE" clause of Schwartz's answer requested judgment "[a]djusting the claims among the defendants," Schwartz had not asserted a cross-claim against any defendant other than Goldberg. He therefore was not entitled to judgment against any other defendant.

with respect to Travelers' rejection of Woodcrest's ORI claims and because the panel that rendered that ultimate decision was appointed by the same entity, *i.e.,* Travelers, that made the initial decision to deny those claims. While we recognize that Woodcrest was a provider of services under Part A of the Medicare Program, we conclude that Schwartz's contention must be rejected on the basis of the reasoning of the Supreme Court in *Schweiker v. McClure,* 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), rejecting similar claims on behalf of beneficiaries of Part B. Only Schwartz's claim that there should have been review by the Secretary merits extended discussion.[5]

### 1. *Part B and* McClure

*McClure* arose out of decisions by hearing officers denying the claims of three individuals seeking reimbursement for their expenditures for certain services under Part B. The claimants contended that the fact that the Secretary provided no review of the decision of the hearing officers denied them due process of law. After a detailed review of the existing procedures, the Supreme Court rejected this contention. 456 U.S. at 200, 102 S.Ct. at 1672. The Court noted that in order to make the administration of Part B more efficient, Congress had authorized the Secretary to contract with private insurance carriers to administer the payment of qualifying claims. *Id.* at 190, 102 S.Ct. at 1667. Part B claimants submit claims to the carrier for reimbursement for services they have received; the carrier decides initially whether the services were medically necessary, whether the charges are reasonable, and whether the claim is otherwise covered by Part B. *Id.* at 191, 102 S.Ct. at 1667; *see* 42 U.S.C. § 1395y(a); 42 C.F.R. § 405.803(b) (1981).

A claimant who is dissatisfied with the initial determination has one or more opportunities to appeal. First he is entitled to a "review determination," in which he may submit written evidence and arguments of fact and law to a carrier employee other than the initial decision-maker; this employee then reviews the record and the

---

5. Schwartz's claim that the panel that eventually denied Woodcrest's claims was improperly constituted because it was appointed by Travelers is squarely foreclosed by *Schweiker v. McClure.* While recognizing that "due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities," the *McClure* Court noted that there is a presumption that the hearing officers who decide Part B claims are unbiased. See *Withrow v. Larkin,* 421 U.S. 35, 47 [95 S.Ct. 1456, 1464, 43 L.Ed.2d 712] (1975); *United States v. Morgan,* 313 U.S. 409, 421 [61 S.Ct. 999, 1004, 85 L.Ed. 1429] (1941). *This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification. See* Gibson v. Berryhill, *411 U.S. 564, 578–579 [93 S.Ct. 1689, 1697–1698, 36 L.Ed.2d 488] (1973);* Ward v. Village of Monroeville, *409 U.S. 57, 60 [93 S.Ct. 80, 83, 34 L.Ed.2d 267] (1972). . . . But the burden of establishing a disqualifying interest rests on the party making the assertion.* Id. *at 195–96, 102 S.Ct. at 1670 (footnote omitted). The Court noted that under Part B, carriers follow prescribed federal procedures and pay all allowed Part B claims out of funds provided by the federal government, not from their own funds.* Id. *at 196, 102 S.Ct. at 1670. If disappointed claimants seek review, the carrier appoints as intermediate reviewers and ultimate hearing officers persons who have not* participated in any prior stage of the claim's adjudication, *id.* at 191, 102 S.Ct. at 1667, and the salaries of these hearing officers are paid by the federal government, *id.* at 196, 102 S.Ct. at 1670. Thus, the *McClure* Court, having noted that there was no claim of "actual" bias on the part of the hearing officers, *id.* at 195 n. 8, 102 S.Ct. at 1670 n. 8, rejected this portion of the due process claim stating that, "[i]n the absence of proof of financial interest on the part of the carriers there is no basis for assuming a derivative bias among their hearing officers." *Id.* at 197, 102 S.Ct. at 1671.

Schwartz's contention in the present case is indistinguishable. Under Part A, as under Part B, the intermediaries such as Travelers reimburse providers from federal, and not their own, funds. 42 U.S.C. § 1395g. The fees and expenses of the hearing officers are paid by the federal government. *See* 42 U.S.C. § 401(g)(1), 1395h(c), 1395i(h). And the providers operate under contracts that require compliance with standards prescribed by the statute and the Secretary. *See* 42 U.S.C. § 1395h; 42 C.F.R. §§ 421.100, 421.110, 421.126 (1981). Thus there is no basis "for assuming a derivative bias" on the part of Travelers' hearing panel. As Schwartz has alleged no financial interest or conflict of interest on the part of Travelers, nor any other reason for disqualification of the hearing panel, this claim was properly rejected.

written submissions and either affirms or adjusts the initial determination. *See* 42 C.F.R. §§ 405.807–405.812 (1981). If the claimant is still dissatisfied and if the amount in dispute is $100 or more, the claimant has a right to an oral hearing before a hearing officer, appointed by the carrier, who has not previously participated in the case. *See* 42 U.S.C. § 1395u(b)(3)(C); 42 C.F.R. §§ 405.820–405.835 (1981); *Schweiker v. McClure, supra,* 456 U.S. at 191, 102 S.Ct. at 1667. Unless the carrier or the hearing officer decides to reopen the proceeding, the hearing officer's decision is "final and binding upon all parties to the hearing . . . ." 42 C.F.R. § 405.835. Neither the statute nor any regulation makes provision for further review of the hearing officer's decision. *See United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982).

The Court pointed out that there is a "strong presumption in favor of the validity of congressional action," *Schweiker v. McClure, supra,* 456 U.S. at 200, 102 S.Ct. at 1672, and that the Court had recognized Congress's " 'solicitude for fair procedure,' " *id.* (quoting *Califano v. Yamasaki,* 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1973)), and it concluded that the *McClure* claimants had not shown that the Part B procedures were unfair.[6]

The Court noted that the district court, in holding that due process required additional review by a government hearing officer, had analyzed the three factors made relevant by *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to such a due process inquiry, to wit:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. The Supreme Court found that its own analysis of the second *Mathews* factor led it to the opposite conclusion. Referring to the first and third *Mathews* factors, the Court assumed the correctness of the district court's view that the private interest in Part B payments was " 'considerable,' though 'not quite as precious as the right to receive welfare or social security benefits,' " and the district court's estimate that the additional cost and inconvenience of providing administrative law judges "would not be unduly burdensome." *Schweiker v. McClure, supra,* 456 U.S. at 198, 102 S.Ct. at 1671. As to the second *Mathews* factor, however, the Supreme Court rejected the district court's views (1) that the existing procedures were constitutionally inadequate because the carriers' hearing officers were not required to have law degrees or other formal training and (2) that more stringent requirements would reduce the risk of erroneous determinations. The Court stated that

the record does not support these conclusions. The Secretary has directed carriers to select as a hearing officer

"an attorney or other *qualified* individual with the ability to conduct formal hearings and with a general understanding of medical matters and terminology. The [hearing officer] must have a *thorough knowledge* of the Medicare program and the statutory authority and regulations upon which it is based, as well as rulings, policy statements, and general instructions pertinent to the Medicare Bureau." App., 22, quoting Department of Health and Welfare Services, Medicare Part B Carriers Manual, p. 12–21 (emphasis added).

The District Court did not identify any specific deficiencies in the Secretary's selection criteria. By definition, a "quali-

---

6. The *McClure* Court's observations, as to the availability of noncarrier appellate review under Part A, *see* 456 U.S. at 198 & n. 12, 102 S.Ct. at 1671 & n. 12, are not pertinent to the

present case. Such review is not available for provider claims relating to cost-reporting periods that ended prior to June 30, 1973. *See* note 8 *infra.*

fied" individual already possessing "ability" and "thorough knowledge" would not require further training. The court's further general concern that hearing officers "are not required to satisfy any threshold criteria" overlooks the Secretary's quoted regulation.

*Id.* at 199, 102 S.Ct. at 1672 (footnote omitted). In sum, the Court concluded that the availability of appellate review by new hearing officers, together with the Secretary's criteria for the selection of these officers, provided sufficient procedural protection.

### 2. *Part A and Woodcrest*

■ We see no significant difference in the Part A procedures under which Woodcrest's reimbursement claims were determined here.[7] The structure—the Secretary relying on carriers or other intermediaries to review reimbursement claims—was the same; the initial decisionmaking processes of the carriers were parallel; and the appellate procedures were not materially different.

Part A of the Medicare Program provides that if any group or association of providers wishes to have its Part A payments made through a public or private agency or organization such as Travelers and nominates such an agency or organization for this purpose, the Secretary is authorized to enter into an agreement providing for the determination by the agency or organization of payments to be made to the providers. 42 U.S.C. § 1395h(a). Thus, just as Part B claimants request reimbursement from the carrier on the basis of their expenditures for services, Part A providers

such as Woodcrest seek reimbursement from the fiscal intermediary on the basis of the cost of their services. *See* 42 C.F.R. § 405.453(f) (1981).

Within a reasonable time after receipt of a Part A provider's cost report, the intermediary analyzes the report, undertakes any necessary audit of the report, and furnishes the provider and any related organization of the provider a notice that reflects the intermediary's determination of the amount of reimbursement; if the intermediary's determination differs from the claim submitted, the notice states the reasons for the difference. *See id.* § 405.1803. Thus, just as Part B carriers determine whether claims are for reasonable amounts for medically necessary services and are otherwise covered by Part B, the Part A intermediaries determine whether and to what extent the providers' claims are for reasonable costs that are reimbursable under Part A.

Finally, the appeal procedure for claims of Part A providers differs from the appeal procedure for Part B beneficiaries in that the preliminary step of a written appeal to an employee of the carrier is omitted. If a Part A provider is dissatisfied with the intermediary's claim determination, and the amount in dispute is at least $1,000, the provider is entitled immediately to request a hearing before a hearing officer, or a panel of such officers. *See id.* § 405.-1811(a). These appellate officers are appointed by the intermediary; they must have had no prior role in the decision, and they must be "persons knowledgeable in the field of health care reimbursement." *Id.* § 405.1817. The appellate procedures per-

---

7. With respect to the period covered by Woodcrest's ORI claims, *i.e.,* August 30, 1968 to April 19, 1969, intermediary claim review procedures were not governed by statute or regulation. The first regulations by the Secretary of intermediaries' procedures for review of their initial determinations became effective on May 27, 1972, and applied only to cost-reporting periods ending on or after December 31, 1971. 42 C.F.R. § 405.1801(c). *See generally* 37 Fed.Reg. 10,722–25 (1972) (codified at 20 C.F.R. §§ 405.490–.499i (1973), "[r]equir[ing] intermediaries to institute review procedures for providers dissatisfied with intermediaries'

determinations on cost reports"). These regulations were soon augmented by more detailed specifications as to the appellate procedures to be followed by intermediaries. *See* 42 C.F.R. §§ 405.1801–.1833; *id.* §§ 405.1881–.1889.

The appellate review of Woodcrest's ORI claims was commenced in October 1973 and extended to May 1977. Although it was not required to do so, Travelers apparently followed the procedures set forth in §§ 405.-1801–.1833 in reviewing its determination of these pre-1971 claims. Hence we discuss the adequacy of the procedures provided by those sections.

mit the parties to conduct prehearing discovery, *id.* § 405.1821, to call and cross-examine witnesses, *id.* § 405.1825, and to present documentary evidence and arguments, *id.* § 405.1823. The hearing officers are required to make a de novo determination of the claims after "inquir[ing] fully into all of the matters at issue and . . . receiv[ing] into evidence the testimony and any documents which are relevant and material to such matters." *Id.* § 405.1819. The officers are empowered to call for such additional evidence as they deem relevant and material. *Id.* The hearing officers render a written decision, *id.* § 405.1831, and unless they decide to reopen their determination, *see id.* § 405.1885(a), the decision is "final and binding upon all parties to the hearing . . . ." *Id.* § 405.1833. Neither the statute nor any regulation makes provision for further review of the hearing officer's decision as to such claims.

These procedures seem adequately designed to provide a fair opportunity for providers to obtain full and meaningful review of the carriers' determinations, and Schwartz has pointed out to us no respect in which they are unfair.[8] The availability of

procedures for the prehearing discovery of evidence, the opportunity to present all relevant and material evidence, to cross-examine witnesses, and to present all pertinent arguments to hearing officers knowledgeable in the health care reimbursement field, together with the obligation imposed on those officers to make a full-scale inquiry and de novo determination, provide adequate safeguards against the risk that the carrier has made an erroneous initial determination.[9] We do not regard the difference between these appellate procedures and those for Part B beneficiaries as material. It is true that the availability under Part B of an initial appeal to an employee of the carrier, prior to the final appeal to a hearing officer, automatically increases the chance of a favorable decision on the claim. But this initial appeal is limited to the presentation of written materials, and its omission under Part A seems insignificant beside the expansive opportunities before the final hearing panel. We note, finally, that there was no suggestion in *McClure* that the Court's conclusion as to the adequacy of the Part B procedures turned upon

---

**8.** We reject Schwartz's contention that Congress's enactment in 1972 of legislation establishing a Provider Reimbursement Review Board to provide agency review of Part A provider claims for cost-reporting periods ending on or after June 30, 1973, *see* 42 U.S.C. § 1395 oo; 42 C.F.R. §§ 405.1835–.1877, bespoke a belief by Congress that the earlier procedures were constitutionally deficient. We have found no such deficiency, and the legislative history indicates only that Congress thought that further review was "desirable," *see* H.R.Rep. No. 92–231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4989, 5094, not that it was constitutionally necessary.

We also reject Schwartz's effort to distinguish *McClure* on the basis that there are far fewer Part A providers than Part B beneficiaries, and hence that the burden on the government of allowing review of Part A claims would not be heavy. The difference in the numbers of anticipated Part A and Part B appeals is hardly pertinent, however, since the *McClure* Court assumed that even Part B review "would not be unduly burdensome." *Id.* at 198, 102 S.Ct. at 1671.

**9.** The *McClure* Court noted that its conclusions as to the adequacy of the Secretary's criteria for selection of hearing officers were confirmed by the evidence in the record as to the qualifi-

cations of nine hearing officers: "[t]wo were retired administrative law judges with 15 to 18 years of judging experience, five had extensive experience in medicine or medical insurance, one had been a practicing attorney for 20 years, and one was an attorney with 42 years experience in the insurance industry who was self-employed as an insurance adjuster." 456 U.S. at 200 n. 15, 102 S.Ct. at 1672 n. 15. Our conclusion in the present case that the procedures afforded Woodcrest did not result in a deprivation of due process is similarly buttressed by the evidence of record as to the qualifications of the Travelers-appointed hearing panel that reviewed Woodcrest's claims. The panel was composed of one person with 18 years' experience in the health service industry, including many years as auditor or comptroller of various hospitals; one person trained as an accountant who had several years' experience in Medicare reimbursement matters; and one person who was then a hospital comptroller with fifteen years' association with the health care field and six years of practice with a major accounting firm. Two of the three panel members had a total of nineteen years' experience as members of the Hospital Financial Management Association.

the opportunity to make a written presentation to a carrier employee or even upon the fact that two appellate steps, rather than one, were available. In short, we conclude that the procedures followed by Travelers in determining Woodcrest's claims and the fact that there was no further review of the appellate panel's decision did not deprive Schwartz of due process.

## B. *Goldberg's Claims*

 The district court granted judgment in favor of Schwartz on his cross-claim against Goldberg under the ORI Repayment Agreement, finding that Goldberg had failed to cooperate as ordered by the arbitration decision. Goldberg challenges this portion of the judgment on a number of grounds. His principal contention is that the issues raised by Schwartz's cross-claim had previously been submitted to arbitration, and that the arbitrators' award, which was confirmed by the appropriate state courts, became res judicata on these issues. This argument must be rejected on the basis of the Arbitrators' Opinion itself.

In 1975 the arbitrators rejected Schwartz's claim that Goldberg was liable to him under the ORI Repayment Agreement. At that time, however, although Travelers had denied Woodcrest's claims for reimbursement for its payments to ORI, there was pending the appeal by Schwartz and Goldberg, seeking payment of those claims under the exception provided by 42 C.F.R. § 405.427(d). Accordingly, Schwartz's claim in 1975 was premature, and in dismissing it the arbitrators stated explicitly that nothing in their award was to preclude Schwartz from asserting such a claim against Goldberg upon a final judicial determination [10] that Woodcrest should not be reimbursed for its ORI payments by virtue of incorrect or inappropriate rates.

*See* Arbitrators' Opinion set forth in full in Part I.A. above. Hence nothing could be clearer than the fact that the arbitrators' award was not a final determination of the rights of Schwartz and Goldberg under the ORI Repayment Agreement. The court confirmed the award without modification, and the fact that the award was judicially confirmed does not imbue it with any greater finality, on this undecided issue, than the arbitrators intended it to have.

 As to the merits of Schwartz's cross-claim, we are unpersuaded that the entry of judgment against Goldberg was improper. The arbitrators did not simply decline to decide the question of Schwartz's rights under the ORI Repayment Agreement; they also "directed" Goldberg "to cooperate fully" in the adjudication of these reimbursement claims. *Id.* It is entirely proper for arbitrators "to direct such conduct of the parties as is necessary to the settlement of the matters in dispute," *Ruppert v. Egelhofer,* 3 N.Y.2d 576, 581, 170 N.Y.S.2d 785, 788, 148 N.E.2d 129, 131 (1958); *accord* 6 C.J.S. *Arbitration* § 110, at 342 (1975), and the district court's finding here that Goldberg's conduct violated the arbitrators' directive was not error. Apparently there was no dispute in the district court as to the fact that Goldberg did not fully cooperate—even after remand by the court for reconsideration—in the hearing panel's review of Woodcrest's claims regarding its ORI payments. At every stage, the hearing officials stated that ORI had withheld needed information, with the result that its costs—the maximum rate of reimbursement normally allowed under 42 C.F.R. § 405.427(a)—could not be determined. In the circumstances, we find no error.

## CONCLUSION

The judgment of the district court is affirmed.

---

**10.** We reject as meritless Goldberg's contention that Schwartz's cross-claim was premature because Schwartz had not yet sustained loss or damage for which he was entitled to be indemnified. The cross-claim was raised conditionally, as Schwartz asserted that "in the event" he was held liable on the United States' claim he was entitled to payment pro tanto from Goldberg. Nor was judgment on the cross-claim entered without the necessary predicate of judgment in favor of the United States against Schwartz.

We have also considered and rejected Goldberg's other contentions. They do not merit discussion.